**Milton W. CAHALL and Olga Cahall, his wife**

v.

**WESTINGHOUSE ELECTRIC CORP.**

Civ. A. No. 86–4183.

United States District Court, E.D. Pennsylvania.

Sept. 23, 1986.

---

807

Michael Wenke, Media, Pa., for plaintiffs.

Alison Pease, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This action was initially commenced in the Court of Common Pleas of Delaware County, Pennsylvania, then removed by defendant to this court. Presently before the court is the motion of plaintiffs to remand to the state court. Assuming that the court finds this case was removed improvidently and without jurisdiction, plaintiffs request the court to assess costs against defendant pursuant to 28 U.S.C. § 1447(c). For the reasons which follow, the motion to remand is denied and the request for an award of costs is denied.

On October 31, 1984, defendant discharged plaintiff Milton Cahall ("Cahall") after he had been employed with defendant for over thirty years. In response to Cahall's discharge, plaintiffs filed a complaint in the Court of Common Pleas of Delaware County, Pennsylvania which contained eight counts, all of which plaintiffs allege arise under state law. Specifically, Count I charges defendant with age discrimination in violation of Pa.Stat.Ann.tit. 43, § 955 (Purdon 1985), Count II charges defendant

with wrongful discharge in violation of the public policy of the Commonwealth of Pennsylvania and Count III charges defendant with intentional infliction of emotional distress. Counts IV through VII charge defendant with various other types of wrongful discharge including "tortious violation of duty of good faith and fair dealing" (Count IV), "breach of reduction in force agreement" (Count V), "breach of employee security and protection plan" (Count VI) and "breach of implied covenant of good faith and fair dealing" (Count VII). Plaintiff Olga M. Cahall has added Count VIII for loss of consortium.

In its petition for removal defendant asserts that the complaint can be removed to federal district court under the provisions of 28 U.S.C. § 1441 because the claims for wrongful discharge set forth in Counts II and VI of the complaint are actually claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA."), 29 U.S.C. § 1001 *et seq.* and have, in fact, been preempted by provisions of ERISA.

Plaintiffs respond that Counts II and VI are not claims which arise under ERISA, but actually arise under the common law of the Commonwealth of Pennsylvania and, as such, do not confer original jurisdiction on this court.

Before we begin our legal analysis, it is necessary to examine in more detail the specific allegations set forth in Counts II and VI of the complaint. In Count II, plaintiffs allege that defendant discharged Cahall only 29 months before he was eligible to receive certain pension and fringe benefits. Complaint at paragraph 47. They allege that defendant's termination of Cahall was willful and based on his age, for the purpose of depriving Cahall of his full pension benefits and to reduce defendant's obligations under the pension plan in effect since Cahall was approaching retirement age. Complaint at paragraph 50. Plaintiffs further allege that "there is a strong public policy in the Commonwealth of Pennsylvania favoring the protection and integrity of Pension Plans and employees rights and interests in said pension plans."

Complaint at paragraph 52. Finally, plaintiffs allege that "Pennsylvania Law is not contrary to ERISA, one of the purposes of which is to 'protect interstate commerce and the interests of participants of Employee Benefit Plans and their beneficiaries'" and that "enactment of ERISA evidences the great significance income security has to millions of the country's retired population in general, and to the Pennsylvania retired population in particular." Complaint at paragraphs 53 and 54.

In Count VI of the complaint, plaintiffs allege that at the time Cahall was discharged, an "Employee Security and Protection Plan" was in effect and governed Cahall's status as an employee of defendant. Complaint at paragraph 100. Defendant's "Employee Security and Protection Plan" provides a number of benefits to eligible employees who are laid off due to a Location Closedown or during a Job Movement or Product-Line Relocation. Complaint at paragraph 105. Cahall alleges that he was laid off due to a planned Location Closedown and/or Job Movement or Product-Line Relocation. Complaint at paragraph 106. Plaintiffs allege that defendant "failed to follow the procedures set forth in the Employee Security and Protection Plan with regard to Location Closedown or Job Movement or Product-Line Relocation when wrongfully terminating Cahall's employment" and by doing so "failed to provide Cahall the opportunity to choose from the various benefits set forth in the Employee Security and Protection Plan when he was laid off due to a Location Closedown or during a Job Movement or Product-Line Relocation...." Complaint at paragraphs 108, 109.

We begin our analysis by noting that it is axiomatic that a case arises under federal law only if a federal question appears on the face of the plaintiff's well-pleaded complaint unaided by the answer or petition for removal. *See, e.g., Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Westmoreland Hospital Ass'n v. Blue Cross of Western Pennsylvania*, 605 F.2d 119, 122 (3d Cir.1979), *cert. de-*

*nied,* 444 U.S. 1077, 100 S.Ct. 1025, 62 L.Ed.2d 759 (1980). Since removal jurisdiction exists only if jurisdiction would originally have been proper in federal court, the "well-pleaded complaint" rule applies to removal cases as well. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Hunter v. United Van Lines,* 746 F.2d 635, 639 (9th Cir.1984).

Courts have consistently held that "the party who brings a suit is master to decide what law he will rely upon." *The Fair v. Kohler Die and Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). Moreover, "where plaintiff's claim involves both a federal ground and a state ground, the plaintiff is free to ignore the federal question and pitch his claim on the state ground." *Salveson v. Western States Bankcard Ass'n,* 731 F.2d 1423, 1427 (9th Cir.1984) (quoting 1A Moore's Federal Practice ¶ 0.160 at 185 (2d ed. 1979)). "Great weight is therefore given to plaintiff's chosen forum, and any legitimate doubts as to the existence of federal jurisdiction must be resolved against removal and in favor of remand." *Stokes v. Bechtel North American Power Corp.,* 614 F.Supp. 732, 736 (N.D.Cal.1985).

Applying these principles to the case *sub judice,* there does not appear to be a basis for federal jurisdiction since the claims asserted in Counts II and VI of the complaint do not explicitly rely upon ERISA or any other federal statute. Plaintiffs' claims are grounded solely upon the common law of the Commonwealth of Pennsylvania. Thus, the present cause of action appears to be governed by state law and the defendant concededly could not have removed the present action to this court on the basis of the literal recitals of plaintiff's complaint.

However, an independent corollary of the well-pleaded complaint rule is the "artful pleading" doctrine which provides that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint. *Franchise Tax Board,* 463 U.S. at 22, 103 S.Ct. at 2852. The "artful pleading" doctrine is a form of judicial construction wherein the court examines the underlying nature of a complaint when the plaintiff has improperly attempted to defeat removal by pleading what in actuality is a federal cause of action, albeit disguised as a state claim. *Kilmer v. Central Counties Bank,* 623 F.Supp. 994, 998 (W.D. Pa.1985). Under "artful pleading," instead of simply accepting the literal recitals of a plaintiff's complaint—which would result in a remand by the federal court for lack of subject matter jurisdiction when the claim arises under state law—the district court (a) recharacterizes plaintiff's state law claims as federal claims, (b) exercises jurisdiction over them, and (c) proceeds to consider whether the plaintiff should prevail under federal law. *Hunter v. United Van Lines,* 746 F.2d 635, 641 (9th Cir.1984).

The artful pleading doctrine has most frequently been applied to cases which fall within the purview of § 301 of the Labor Management Relations Act ("LMRA"). For instance, in *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 1235 (1968), the plaintiff brought suit in state court for breach of contract alleging that the respondent union violated the applicable collective bargaining agreement by participating in and sanctioning work stoppages. Such claims are governed by § 301 of the Labor Management Relations Act. Both the United States Court of Appeals for the Sixth Circuit and the Supreme Court found "that the petitioner's action 'arose under' § 301, and thus could be removed to federal court, although the petitioner had undoubtedly pleaded an adequate claim for relief under the state law of contracts and had sought a remedy available only under state law."

However, the Supreme Court in *Franchise Tax Board, supra,* stated that the artful pleading doctrine is not limited to labor law disputes. Relying on the principles articulated in *Avco, supra,* Justice Brennan, speaking for a unanimous court, stated:

Avco stands for the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily "arises under" federal law.

... It may be that as with § 301 [of the LMRA] as interpreted in Avco, any state action coming within the scope of § 502(a) of ERISA would be removable to federal district court, even if an otherwise adequate state cause of action were pleaded without reference to federal law.

*Franchise Tax Board*, 463 U.S. at 23–24, 103 S.Ct. at 2853–54. While the Supreme Court in *Franchise Tax Board* ultimately found that the "artful pleading" doctrine was inapplicable to the facts before it,[1] it is evident that its decision paved the way for the "artful pleading" doctrine to be applied to cases which fall within the purview of § 502(a) of ERISA. *See Kilmer v. Central Counties Bank, supra.*

In *Kilmer, supra* at 998, the court adopted the guidelines set forth in *Hunter v. United Van Lines, supra* for determining whether to apply the artful pleading doctrine. First, the court must determine whether federal preemption exists; if not, there is no federal jurisdiction, and remand is the proper course. If preemption exists, the court must then determine whether a remedy is provided by federal law. Applying these guidelines to the case *sub judice,* the initial inquiry becomes whether the claims contained in Counts II and VI are in fact preempted by ERISA. If there is no preemption, the inquiry ends, and the case must be remanded to state court. However, if it is ascertained that plaintiffs' claim is indeed preempted by ERISA, then the inquiry turns to whether or not ERISA confers an exclusive federal remedy.

We begin by noting that ERISA contains an explicit and broad preemption provision.

ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." Section 514(a), 29 U.S.C. § 1144(a).[2] By this language, Congress meant to establish pension plan regulation as an exclusively federal concern. *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). It sought to reserve to itself the "sole power to regulate" the field of employee benefit plans, *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 99, 103 S.Ct. 2890, 2901, 77 L.Ed.2d 490 (1983). Accordingly, Congress intended the preemption provision to have a scope as broad as its language suggests. *Shaw,* 463 U.S. at 98, 103 S.Ct. at 2900. If a state law has a "connection with or reference to" an employee benefit plan, it "relates to" such a plan within the meaning of § 1144(a). *Shaw,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900 (1983). The ERISA preemption extends to state common law causes of action as well as state regulatory statutes, and that claims brought under state-law doctrines that do not explicitly refer to employee benefit plans are nonetheless preempted when the claims arise from the administration of such plans. *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1504 (9th Cir. 1985). Preemption of state law claims by ERISA depends on the conduct to which such law is applied, not on the form or label of the law. *Id.* Therefore, in determining whether both of plaintiffs' claims are preempted by ERISA, we must inquire as to whether the conduct challenged by each claim was part of the administration of an employee benefit plan. *Id.* at 1505.

Plaintiffs' first claim asserts no more nor less than that defendant wrongfully discharged Cahall in order to avoid its obligations to pay Cahall certain pension and fringe benefits which he would have been entitled to receive under the terms of

---

1. In *Franchise Tax Board,* the Supreme Court determined that the action was not removable because it did not "arise under" ERISA as it was a suit brought by state tax authorities. Section 502(a) of ERISA provides only for civil actions by participants, beneficiaries, fiduciaries or the Secretary of Labor. 29 U.S.C. § 1132(a).

2. Neither party contends that any of the exceptions to § 514(a) listed in § 514(b) applies in this case.

an employee pension plan. Similarly, plaintiffs' second claim asserts no more nor less than by failing to follow certain procedures set forth in the Employee Security and Protection Plan when wrongfully terminating Cahall, defendant deprived Cahall of certain layoff benefits which he would have been entitled to receive under the terms of the Employee Security and Protection Plan. Since both wrongful discharge claims indeed arise from the administration of an employee benefit plan, they are preempted by ERISA.

At this juncture, we have determined that plaintiffs' claims are preempted by ERISA; thus the first step of the artful pleading analysis has been satisfied. The next step is to determine whether ERISA confers a federal remedy in the matter which is comprehensive in scope and coextensive with available state remedies, *Kilmer*, 623 F.Supp. at 1001.

 Section 502(a)(1)(B) of ERISA explicitly provides that a participant or beneficiary may bring a civil action to recover benefits due him under the terms of his plan. 29 U.S.C. § 1132(a)(1)(B). More specifically, § 510 of ERISA provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan...., or *for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ...*" 29 U.S.C. § 1140 (emphasis added). We, therefore, conclude that ERISA confers a federal remedy upon the plaintiffs and the final step of the artful pleading analysis has been completed. Thus, we conclude that plaintiff's claims under Counts II and VI of the complaint are preempted by ERISA, which provides a federal remedy.

Finally, with the exception of the *Franchise Tax Board* decision, we find that none of the cases cited by plaintiffs in support of their motion for remand are applicable to the facts of the case *sub judice*. None of these decisions concern the broad preemptive clause of ERISA nor do they discuss the removal of a claim arguably governed by ERISA.

Because the claims set forth in Counts II and VI of the complaint actually arise under ERISA and, therefore, under the laws of the United States, we find the action was properly removed to federal district court, and we, therefore, deny the motion to remand.

## ORDER

The motion of the plaintiffs to remand this matter to the Court of Common Pleas of Delaware County, Pennsylvania is DENIED.

The request of plaintiffs for an award of costs is DENIED.

Trial of this matter is scheduled for Monday, November 3, 1986, at 9:30 a.m., Courtroom 6B, United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania.

IT IS SO ORDERED.